## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEPHANIE GRAHAM, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 2:24-cv-06086-KBH |
| | : | |
| THE CITY OF PHILADELPHIA, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>ORDER</u>

**AND NOW**, this _____, day of _____, 202__, upon consideration of Defendants the City of Philadelphia and John P. Sabatina's Motion for Sanctions for Engaging in Fraud During Discovery, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **GRANTED** and Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

_____
The Honorable Kelley Brisbon Hodge,
United States District Judge

11905545.v1

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|                                         |     |                      |
| --------------------------------------- | :-- | -------------------- |
| STEPHANIE GRAHAM,                       | :   |                      |
|                                         | :   |                      |
| Plaintiff,                              | :   | CIVIL ACTION         |
|                                         | :   |                      |
| v.                                      | :   | No. 2:24-cv-06086-KBH |
|                                         | :   |                      |
| THE CITY OF PHILADELPHIA, et al.        | :   |                      |
|                                         | :   |                      |
|                                         | :   |                      |
| Defendants.                             | :   |                      |
|                                         | :   |                      |

### **DEFENDANTS' MOTION FOR SANCTIONS FOR ENGAGING IN FRAUD DURING DISCOVERY**

Defendants, the City of Philadelphia and John P. Sabatina, Register of Wills, hereby move for this Court to sanction Plaintiff Stephanie Graham's malfeasance during discovery. Specifically, this Court should dismiss Plaintiff's case with prejudice because she has engaged in fraudulent conduct during the pendency of this litigation: first serving a facially false interrogatory response and later—and more strikingly—fabricating a document, forging an elected official's signature, and then perjuring herself at her deposition while discussing the fabricated evidence.

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By: */s/ Alexander M. Owens*
    Gaetan J. Alfano, Esquire
    P.A. ID No. 32971
    Michael A. Morse, Esquire
    P.A. ID No. 80507
    Alexander M. Owens
    P.A. ID No. 319400
    1818 Market Street, Suite 3402
    Philadelphia, PA 19103
    *gja@pietragallo.com*

*mam@pietragallo.com*
*amo@pietragallo.com*
(215) 988-1427 (Telephone)
(215) 981-0082 (Telecopy)

*Attorneys for Defendants*
*City of Philadelphia and*
*John P. Sabatina*

Dated: December 17, 2025

2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEPHANIE GRAHAM, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 2:24-cv-06086-KBH |
| | : | |
| THE CITY OF PHILADELPHIA, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS FOR ENGAGING IN FRAUD DURING DISCOVERY

### I.    Introduction

Regretfully, but out of the necessary duty to protect the integrity of these proceedings, Defendants move for dismissal of Plaintiff Stephanie Graham's case due to her fraudulent conduct during discovery.  While dismissal is a grave sanction, it is the only appropriate response to the serious misconduct discovered here. Ms. Graham has not merely exaggerated claims—she has engaged in wholesale fabrication of evidence during discovery.  This misconduct strikes at the heart of the judicial process.

"[I]t is well-settled that a district court may dismiss a suit outright in response to litigation abuses" such as fabrication of evidence. *See Brown v. Adams*, No. CV 19-638, 2020 WL 8249570, at *11 (W.D. Pa. June 11, 2020), *R&R adopted*, 2021 WL 210490 (W.D. Pa. Jan. 21, 2021) (dismissing claim for fabrication of evidence) (internal quotation marks omitted).  First, Ms. Graham served a materially and facially false interrogatory response in this matter.  Second, and more egregiously, she fabricated evidence during discovery—going so far as to forge the signature of Tracey Gordon, the now-former Register of Wills.  *See* 18 Pa. Stat. § 4101 (forgery is generally

a felony); *see also Stonecreek - AAA, LLC v. Wells Fargo Bank N.A.*, No. 1:12-CV-23850, 2014 WL 12514900, at \*2 (S.D. Fla. May 13, 2014) ("Fraud upon the court takes many forms, but the instant case presents the near-classic example – fabrication of evidence.").  And these are not close calls.  For example, the fabricated document, a leave request form allegedly from June 2021: (a) uses a form template that did not exist in June 2021 (having come into effect in September 2024); and (b) includes a purported signature for Ms. Gordon that is clearly inauthentic (for one, "Tracey" is spelled "Tracy" and "Gordon" is spelled "Godrn").  When given the opportunity to come clean at her deposition, she continued to claim that the document was legitimate.

While dismissal is a hard sanctions, it is warranted in the unique circumstances of this case. Ms. Graham's misconduct offends the machinery of the justice system, a system which fails if parties are permitted to fabricate evidence.  *See Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 411 (W.D. Pa. 1996), *aff'd sub nom. Derzack v. Cnty. of Allegheny Children and Youth Services*, 118 F.3d 1575 (3d Cir. 1997) (in imposing sanctions a court must not just protect litigants from abuse, it must also ensure that the judicial system as a whole is protected from fraudulent conduct).

## II.    Facts

### a.  Case Background

This is a 42 U.S.C. § 1983 employment discrimination action arising from Ms. Graham's claim that she was terminated from her employment with the City of Philadelphia's Register of Wills office in violation of her First Amendment rights.  Defendants have raised certain defenses in this matter which are relevant to this Motion.[1]

---

[1] These are not the only defenses at hand, only those are pertinent to this Motion.

Defendants assert that Ms. Graham was terminated for two legitimate reasons. First, Ms. Graham was a nepotism hire of then-Register of Wills Tracey Gordon. Second, she was grossly overpaid. Ms. Graham made nearly six figures as a low-level clerk, when someone in that position and of her seniority should have made around half that sum. Defendants also raised an after-acquired evidence defense. *See,* Answer to Am. Compl., Dkt. 20, at 5.. After Ms. Graham was terminated, an investigation initially suggested and later made clear that she had engaged in time fraud. Specifically, she took an international vacation to Costa Rica in June 2021 with Ms. Gordon for Ms. Gordon's birthday, but she did not take leave to do so (i.e., she was improperly paid while on her tropical retreat). Ex. A, Graham Dep. Excerpts, at 47:15-23 (discussing the vacation in June 2021 for Ms. Gordon's birthday) ; Ex. B, Roseboro Dec., at ¶¶ 14-15.

### b.  The Friendship Issue and the False Interrogatory Response

As to the matter of Ms. Graham being a "nepotism hire" of Ms. Gordon, Defendants promptly issued an interrogatory to Ms. Graham seeking information as to whether she ever had "any familial or personal relationship" with Ms. Gordon and the nature thereof. On April 15, 2025, Ms. Graham lodged an objection to this clearly relevant discovery, Ex. C, Initial Interrogatory Resp., No. 17, at p. 12, but after an extended discovery dispute process among the parties, Ms. Graham finally responded to the properly-propounded interrogatory. On July 29, 2025, Ms. Graham served an amended response to the interrogatory, and now claimed that she had never had any "familial or personal relationship with Tracey Gordon outside of their work relationship." Ex. D, Amended Interrogatory Resp., No. 17, at p. 12.

Defendants were perplexed by the response because it was widely reported within the office that Ms. Graham had been close friends with Ms. Gordon. In order to address the inconsistency, Defendants engaged in an investigation into the relationship between the two

3

individuals. This involved spending hours reviewing emails.[2] In doing so, it became apparent that the two individuals, in fact, were friends, and such close friends that Ms. Graham and Ms. Gordon vacationed in Costa Rica together for Ms. Gordon's birthday. Ex. E, Exemplary Vacation Email with Itinerary. In response, Ms. Graham (through her counsel) claimed that she was pressured into becoming friends with Ms. Gordon—hardly a compelling explanation given that the purported "origin" of their friendship does not obviate the fact that the two had a personal relationship (the crux of the interrogatory at issue). Ex. F, Aug. 2025 Emails Among Counsel ("Ms. Gordon pressured Ms. Graham to be friends with her, to make the Costa Rica travel arrangements and to accompany her on the trip.").

This updated representation by counsel flatly contradicted the plaintiff's verified interrogatory response. But a false interrogatory response is not the only issue at hand.

### c. The Time Theft Issue

In reviewing evidence relevant to the Gordon-Graham vacation, it became clear that Ms. Graham had been paid by the City during her trip. *See, e.g.,* Ex. B, Roseboro Decl., at ¶¶ 14-15 (Ms. Graham did not take leave time for her vacation). This issue was relevant to the after-acquired evidence defense—time theft is a crime and, as such, is punishable by termination—as well as the question of whether Ms. Graham was friends with Ms. Gordon. Accordingly, Defendants reviewed pertinent employment files and did an exhaustive document search to determine whether Ms. Graham had used her vacation leave during her international trip. She had not. Defendants could not find *any evidence* that she had requested, let alone used any, leave time for her vacation.

---

[2] Given that the events at issue occurred in large part during the COVID pandemic when remote work meant that communications were largely digital, there was an inordinate number of emails to review.

In fact, Ms. Graham's payroll records showed that she had not taken leave.  Ex. G, Payroll Records (no vacation leave time used).

After Defendants raised the issue to her counsel, Ms. Graham produced a copy of a purported leave request form for her June 2021 trip.  Ex. H, Purported June 2021 Leave Request Form (marked as Exhibit 23 at Ms. Graham's deposition).

The document produced by Ms. Graham is ***clearly fraudulent***.  First, the signature within spells "Tracey" as "Tracy" and "Gordon" as "Godrn."



Second, even beyond the spelling errors, the produced signature looks nothing like Ms. Gordon's actual signature (examples excerpted below).  Ex. I, Exemplary Authentic Signatures.

TRACEY L. GORDON
Register of Wills

Signature
Hon. Tracey L. Gordon
Register of Wills

Third, the leave request forms used within the Register of Wills are templates which are periodically updated.  Ex. B, Roseboro Decl. at ¶¶ 3-5.  This means that one can look at a leave form and determine the "leave form era" from which it arises.  The version used in Ms. Graham's purported June 2021 leave slip ***did not exist until September 20, 2024***.[3]  *Id.* at ¶¶ 7-12.

Below one can compare the form in effect in early June 2021 (i.e., the form that first went into effect in February 2021, which is attached as Exhibit J)[4] and the form that went into effect in

---

[3] Defense counsel also performed an additional investigation to determine whether this purported leave request was ever submitted to the City.  They found no evidence that it had been.

[4] This template was later updated on or about June 4, 2021, but the only substantive change was to the "TO:" line addressees (which went from specific staffers to the generic "HR Department").  *See* Ex. K, Graham Leave Form from July 2021 (using June 4, 2021 template).  So, like the February 2021 template, the June 2021 template looks

11905545.v1

September 2024 (the latter, attached as Exhibit L, mirrors the form produced by Ms. Graham).  It is apparent that the form that Ms. Graham produced was not, and could not have been, used in June 2021 because **it did not exist yet**.  For example, only from September 2024 onward did the form include data fields like "Certify Sick Leave" and "*A doctor note needed" as well as a "Today's Date" entry at the top of the form—all of those elements appear in Ms. Graham's fraudulent leave form.  *See* Ex. B, Roseboro Decl., at ¶¶ 7-12 (confirming that the form used by Ms. Graham was created in September 2024).

**<u>Exemplary Authentic Leave Form Using February 2021 Template (Ex. J)</u>**



**September 20, 2024 Leave Form Template (Ex. L)**

_____

nothing like the form that Graham produced.  Put another way, had Ms. Graham *actually* obtained leave for her June 2021 vacation, her form would have used the February or June 2021 templates, not the September 2024 template.

7

**(Style Used by Ms. Graham in her Fraudulent "June 2021" Leave Request Form)**



The form's cover letter email and metadata, *id.* at p. 1, 3 (metadata excerpt below), also shows that this version did not exist before September 2024.  *See also* Ex. B, Roseboro Declaration, at ¶¶ 7-12 (confirming same).



| Date Created | 09/19/2024 7:52 pm (UTC) |
| --- | --- |
| Date Modified | 09/20/2024 12:56 pm (UTC) |
| Date Saved | 09/20/2024 12:56 pm (UTC) |

Ms. Gordon has also confirmed that she did not sign the form that Ms. Graham produced during discovery.  Ex. M, Gordon Decl., at ¶ 4.

Finally, Ms. Graham was provided an opportunity at her deposition to clear the record. Instead, she doubled down on her fraud, maintaining that the leave request document was authentic.  Ex. A, Graham Dep. Excerpts, at 51:1-10 (excerpted below).

```
1        Q.     T-r-a-c-y, why is there no E after
2   the C?
3        A.     I don't see that.  It's not an E.
4        Q.     How about her last name, it says
5   G-o-d-r-n?
6        A.     That doesn't even spell Gordon.
7        Q.     That's my point.
8               Are you sure this is an
9   authentic document?
10       A.     Yes, it is.
```

### III.    Ms. Graham's Case Should be Dismissed for Fabricating Evidence

#### a.  The Court's Power to Dismiss

The court has inherent power to dismiss a case for fabrication of evidence.  *See Brown v. Adams*, No. CV 19-638, 2020 WL 8249570, at *11 (W.D. Pa. June 11, 2020), *R&R adopted*, No. CV 19-638, 2021 WL 210490 (W.D. Pa. Jan. 21, 2021) ("[I]t is well-settled that a district court may dismiss a suit outright in response to litigation abuses.") (internal quotation marks omitted); *see also Frazier v. S.E. Georgia Health System, Inc.*, No. 2:21-CV-21, 2023 WL 10366708, at *17 (S.D. Ga. Nov. 8, 2023), *R&R adopted,* No. 2:21-CV-21, 2024 WL 889994 (S.D. Ga. Mar. 1,

9

2024) ("Courts consistently use their inherent power to sanction parties who fabricate evidence."). Federal Rules of Civil Procedure 37 and 41 also provide authority to sanction such litigation abuses. *See*, *e.g., REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 998 (N.D. Ill. 2005), *aff'd,* 200 Fed. Appx. 592 (7th Cir. 2006) (unpublished) (recognizing that Rule 37's scope is broad and that abusive litigation activity may fall within its ambit even if the conduct does not violate a conventional court order). But regardless of which basis is invoked, the standard is materially the same. *See Brown*, 2020 WL 8249570, at *11 (the same analysis applies regardless of whether the court exercises its inherent powers or looks to the Rules of Civil Procedure).

In determining whether dismissal is warranted, courts consider the factors set out in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1983), namely:

> (1) the extent of the *party's* personal *responsibility;*
> (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery;
> (3) a *history* of dilatoriness;
> (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;*
> (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and
> (6) the *meritoriousness* of the claim or defense.

*Id.* at 868 (emphasis in original).

Further, when fabrication of evidence is at issue, it is appropriate to consider prejudice to the judicial system as whole in addition to prejudice to the adversary:

> [w]here fraud on the court is the underlying misconduct upon which the district court is considering dismissal, a modified *Poulis* analysis provides the most suitable framework, the major modification being that 'prejudice' encompasses not only the prejudice to the litigants but also the impact on the judicial system and the threat to the integrity of the courts which cannot command respect if they cannot maintain a level playing field amongst the participants.

*Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 414 (W.D. Pa. 1996), *aff'd sub nom. Derzack v. Cnty. of Allegheny Children and Youth Services*, 118 F.3d 1575 (3d Cir. 1997); *see also, e.g., In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liab. Litig.*, 381 F. Supp. 2d 421, 425 (E.D. Pa. 2005) (same).

Finally, the *Poulis* analysis is a balancing test:

> In balancing these factors, no single *Poulis* factor is dispositive, and not all of the *Poulis* factors need to be satisfied in order to dismiss a complaint. Dismissal may be appropriate so long as the ... court carefully considers and weighs the several factors and reasonably exercises his or her discretion in finding the scales tip toward dismissal.

*Brown,* 2020 WL 8249570, at *11 (cleaned up).

### b.    Ms. Graham's Misconduct Warrants Dismissal

While Ms. Graham's perjurious interrogatory response alone may not require dismissal, her fabrication of evidence and subsequent testimony doubling down on her fraud (whether alone or in combination) surely does. *See, e.g., Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("It strikes us as elementary that a federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court."); *Stonecreek - AAA, LLC v. Wells Fargo Bank N.A.*, No. 1:12-CV-23850, 2014 WL 12514900, at *2 (S.D. Fla. May 13, 2014) (fabrication of evidence is a "near-classic example" of a fraud upon the court and finding that such misconduct warranted dismissal); *Frazier*, 2023 WL 10366708, at *17 (dismissal warranted for fabrication of evidence); *see also C.B.H. Resources, Inc. v. Mars Forging Co.*, 98 F.R.D. 564, 569 (W.D. Pa. 1983) (dismissing plaintiff's case where plaintiff used bogus subpoena and false threats to secure witness's statement).

That the fabrication and forgery issue came on the heels of Ms. Graham's earlier false interrogatory response simply highlights the severity of Ms. Graham's misconduct and her disdain

11

for the judicial process, thereby making dismissal even more appropriate. Put another way, whether the false leave slip malfeasance is viewed alone or in combination with her false interrogatory response, dismissal is warranted.

### i. Ms. Graham's Responsibility and Willful, Bad Faith Conduct

The first *Poulis factor* weighs strongly in favor of dismissal. Ms. Graham bears sole responsibility for her misconduct. There is no indication that she was counseled by her attorney to lie in her interrogatory response, let alone told to fabricate the leave form and forge Ms. Gordon's signature. To reiterate, undersigned counsel has no reason to believe the Plaintiff's counsel was involved in his client's offenses. She engaged in this malfeasance alone.

Relatedly, it is clear that Ms. Graham engaged in willful and bad faith conduct. These were not mere mistakes. Rather, this was part of a clearly designed scheme to convince Defendants that: (a) Ms. Graham was not friends with Ms. Gordon; and (b) that Ms. Graham had taken leave during her vacation. Fabricating evidence, like lying in an interrogatory response, is the sort of clearly wrongful conduct which evinces the utmost bad faith. *See, e.g., Aoude* 892 F.2d at 1118 (where party fabricated evidence used in litigation the party's "bad faith [wa]s manifest"). In fact, forging Ms. Gordon's signature is not just a discovery abuse, it is a felony under Pennsylvania law. *See* 18 Pa. Stat. § 4101(a)(2) (forgery is a felony if it involves a government instrument or purports to affect legal relations). Perjuring oneself at a deposition is also no less egregious.

### ii. Ms. Graham's Pattern of Bad Faith Conduct

A traditional *Poulis* analysis would examine the "history of dilatoriness" factor by assessing whether a party refused to timely answer discovery or engaged in similarly dilatory activity. However, Ms. Graham's conduct is significantly more troubling. She has not simply dragged her feet during discovery, she has repeatedly engaged in deceitful conduct. As noted

above: (a) Ms. Graham lied in her interrogatory response; (b) provided a fabricated leave request form; (c) forged a public official's signature; and (4) when given the opportunity to recant, perjured herself at her deposition. *See Vargas v. Peltz*, 901 F. Supp. 1572, 1575 (S.D. Fla. 1995) (dismissing claims where plaintiff lied at her deposition and produced a piece of evidence that, like here, could not have existed during the relevant period).

### iii.    The Meritoriousness factor

Under *Poulis,* the meritoriousness factor simply looks to whether the claim or defenses at hand would, as alleged and if established at trial, support the party's claim or defense. *See Poulis*, 747 F.2d at 869-70.  Here, Defendants do not contest for purposes of this motion that Ms. Graham has pled a First Amendment retaliation claim, although Defendants have asserted various defenses thereto (e.g., that Ms. Graham was terminated for a legitimate, non-discriminatory reason). *See* Answer to Am. Compl., ECF No. 20, at pp. 4-6.  Accordingly, this factor is neutral. *See Dunkin' Donuts Franchised Restaurants LLC v. JF-Totowa Donuts, Inc.*, No. CIV. 09-2636, 2013 WL 1352246, at *3 (D.N.J. Apr. 2, 2013) ("[W]here both parties' positions appear reasonable from the pleadings, the issue of meritoriousness is neutral and non-dispositive.") (internal quotation marks omitted).

### iv.    Prejudice is Apparent and No Lesser Sanction is Appropriate

Prejudice is clear as well—both in terms of prejudice to Defendants and to the judicial system as whole.  As to the former, Defendants have been forced to spent time and money to address Ms. Graham's denial of her personal ties to Ms. Gordon and to address the related issue of her time theft.[5] *Brown*, No. CV 19-638, 2020 WL 8249570, at *11 ("Defendants have been

---

[5] Plaintiff also issued discovery into her own fraudulent conduct, which necessitated additional hours of legal work to respond to. *See* Ex. N, Graham Requests for Production.

required to invest time and resources to determine, and dispute, the veracity of Plaintiff's fabricated documents. Defendants have therefore suffered prejudice.").

Further, when a party fabricates evidence, prejudice arises because the victimized party is unable to trust any of the evidence that its unscrupulous opponent has offered during discovery (be it documentary evidence, written responses, or testimony). *See Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009) ("The submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation. The prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate.").

Prejudice to the judicial machinery is apparent as well. Fabrication of evidence strikes to the heart of the judicial process, a process which exists to allow factfinding. If parties are free to manufacture evidence, forge signatures, and lie during discovery, the judicial process is no longer a factfinding process at all. *See Derzack*, 173 F.R.D. at 411 (dismissing plaintiff's claims for discovery abuses and recognizing that "[t]he court's obligation is to protect not only litigants who may suffer from abusive litigation practices of their adversaries, but also to promote the proper function of a fair and effective judicial system which, while it is adversarial, need not also be callous, uncivil, sneaky or booby-trapped. When it becomes so, the courts must act decisively."); *Garcia*, 569 F.3d at 1180 ("Litigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues."); *c.f. Aoude*, 892 F.2d at 1119–20 ("We find the caselaw fully consonant with the view that a federal district judge can order dismissal or default where a litigant has stooped to the level of fraud on the court.");

14

*Vargas*, 901 F. Supp. at 1582 ("Federal courts have the inherent power to dismiss an action for misconduct that abuses the judicial process and threatens the integrity of that process").

For much the same reason, no lesser sanction is appropriate. Courts routinely find that dismissal is warranted when a party has engaged in such profound misconduct. *See, e.g., Ciba Specialty Chemicals, Corp. v. Zinkan Enterprises, Inc.*, No. C2-03-174, 2003 WL 22309275, at *4 (S.D. Ohio July 29, 2003) ("Federal case law clearly establishes that dismissal of claims or entry of default is the appropriate sanction where a party manufactures evidence which purports to corroborate its substantive claims or hampers the presentation of its opposing party's claims . . . This sanction is the only one appropriate to deter [the offending party] from future misconduct while at the same time protecting [the victimized party] and adequately remedying its harm."); *Wolfe v. GC Services Ltd. Partn.-Delaware*, No. CIV. 08-10628, 2009 WL 230637, at *7 (E.D. Mich. Jan. 30, 2009) ("When a party fabricates evidence purporting to substantiate its claims, federal case law is well established that dismissal is appropriate."); *Eppes v. Snowden*, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986) (dismissing defendant's counterclaim and ordering an award of fees to plaintiff where defendant had, inter alia, produced backdated evidence); *Vargas*, 901 F. Supp. at 1582 (dismissal warranted where plaintiff produced a fabricated piece of evidence and lied at her deposition). That is because fabrication of evidence attacks the core judicial process.  A mere award of monetary sanctions (effectively a speeding ticket for a grave offense) is inappropriate and does not adequately punish the malfeasant, let alone deter future misbehavior.[6]  *See, e.g., Neal v. IMC Holdings, Inc.*, No. 1:06-CV-3138-WSD-AJB, 2009 WL 10669622, at *3 (N.D. Ga. Mar.

---

[6] Further, Defendants understand from discovery that Ms. Graham has little in terms of financial means. *See,. e.g.,* Ex. A, Graham Dep. at 43:5-45:5 (Ms. Graham makes minimal money doing independent contractor insurance sales and via a rental property and must rely on family members for financial support).  So, not only would a "speeding ticket" monetary sanction be wholly inappropriate given the seriousness of Ms. Graham's wrongdoing, the ticket would go unpaid.

31, 2009) ("Monetary sanctions, exclusion of evidence, and dismissal of only the discriminatory discharge claim are insufficient in this case where Plaintiff has proven herself an untrustworthy party, and where lesser sanctions would only invite abuse of the judicial process, telling litigants that they have everything to gain and nothing to lose by engaging in misconduct.") (internal quotation marks and citations omitted).

## IV.    Conclusion

This Court should dismiss Ms. Graham's case for her grave misconduct in this matter. This sanction is wholly consistent with the severity of Ms. Graham's malfeasance, and it is necessary to send a clear message to Ms. Graham and all other litigants who are willing to sabotage the judicial process.

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP


By: _____
      Gaetan J. Alfano, Esquire
      P.A. ID No. 32971
      Michael A. Morse, Esquire
      P.A. ID No. 80507
      Alexander M. Owens
      P.A. ID No. 319400
      1818 Market Street, Suite 3402
      Philadelphia, PA 19103
      gja@pietragallo.com
      mam@pietragallo.com
      amo@pietragallo.com
      (215) 988-1427 (Telephone)
      (215) 981-0082 (Telecopy)

      *Attorneys for Defendants*
      *City of Philadelphia and*
      *John P. Sabatina*

Dated: December 17, 2025

11905545.v1

**EXHIBIT LIST**

| Exhibit | Description |
|---------|-------------|
| A | Graham Deposition Excerpts |
| B | Roseboro Declaration |
| C | Initial Interrogatory Responses |
| D | Amended Interrogatory Responses |
| E | Vacation Email with Itinerary |
| F | Emails Among Counsel |
| G | Payroll Records |
| H | Ms. Graham's Purported Jun. 2021 Leave Request Form |
| I | Examples of Gordon Authentic Signatures |
| J | Leave Request Form (Feb. 22, 2021 Version) |
| K | Leave Request Form (Jun. 4, 2021 Version) |
| L | Leave Request Form with Metadata and Cover Email (Sep. 2024 Version) |
| M | Gordon Declaration |
| N | Plaintiff's Requests for Production |

11905545.v1

## <u>MEET AND CONFER CERTIFICATION</u>

I, Alexander M. Owens, counsel for Defendants, hereby certify that on November 14, 2025, I conferred with counsel for Plaintiff in person regarding Defendants' intent to file the instant motion.  Given the nature of the issues in this motion and the relief requested, the parties cannot amicably resolve this dispute, thereby necessitating the filing of this motion.


Date: December 17, 2025                    */s/ Alexander M. Owens*
                                         Alexander M. Owens, Esquire

## <u>CERTIFICATE OF SERVICE</u>

I, Alexander M. Owens, hereby certify that on December 17, 2025, I caused a true and correct copy of the foregoing Motion to be served on all counsel of record via the Court's ECF system.


Date: December 17, 2025                    _/s/ Alexander M. Owens_____
                                           Alexander M. Owens, Esquire